FILED - GR
August 2, 2007 3:55 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___/___

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

LEIF ALFENAS,

Plaintiff,

vs.

PANTERA PARTNERSHIP, a common-law partnership; VINCENT PAUL ABBOTT; PHILIP HANSON ANSELMO; REX ROBERT BROWN; and ESTATE OF DARELL LANCE ("DIMEBAG DARRELL") ABBOTT, individually and severally,

Defendants.

1:07-cv-749

Richard Alan Enslen
US District Judge

ERIC C. GRIMM (P58990)
WILLIAMS, HUGHES, & COOK, PLLC
120 W. Apple Avenue, P.O. Box 599
Muskegon, MI 49443-0599
(231) 728-1111
Fax: (231) 727-2130
Email: egrimm@whcspc.com

Attorneys for Plaintiff.

Howard Hertz, Esq. (P26653)
Derek D. McLeod, Esq. (P66229)
HERTZ SCHRAM, PC
1760 S. Telegraph, Suite 300
Bloomfield Hills, MI 48302
Telephone: (248) 335-5000
Facsimile: (248) 335-3346
Email: hhertz@hertzschram.com

Attorneys for Defendants.

**ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Mr. Leif Alfenas, through his attorneys WILLIAMS, HUGHES & COOK, PLLC, respectfully states:

1. This is a Declaratory Judgment action, under 28 U.S.C. § 2201(a), based on an actual controversy within the jurisdiction of this Court, between the Plaintiff and Defendants.

2. This Court has subject-matter jurisdiction based on 28 U.S.C. §§ 1338 (trademarks), 1331 (federal question), and 1332 (diversity of citizenship).

3. An actual controversy exists because attorneys Howard Hertz and Derek McLeod, acting at the behest of the Defendants, in correspondence initiated in and addressed to the State of Michigan, dated July 17, 2007 and July 31, 2007, respectively, specifically threatened litigation and the imminent filing of a lawsuit against the Plaintiff.

4. Accordingly, Plaintiff has formally been placed in reasonable apprehension of litigation, and is entitled to rely upon the "first-filed rule," in order to have the actual controversy between the parties resolved in this forum. E.g., Cobasys, L.L.C. v. FMP Resistance Welding Supply, Inc., C.A. No. 05-40043, 2006 WL 901681 (E.D. Mich. Mar. 31, 2006)[1] (citing Smith v. M'Iver, 9 Wheat. 532, 22 U.S. 532, 535 (1824); In re American Med. Sys., Inc., 75 F.3d 1069, 1088 (6th Cir. 1996); and Barber-Greene v. Blaw-Knox Co., 239 F.2d 774, 778 (6th Cir. 1957)).

5. Plaintiff has a legitimate reason for filing in this district, as opposed to Mr. Hertz's preferred district, because of (1) Plaintiff's reasonable interest in employing the services of counsel who is particularly expert in this area of law and who has defended and prosecuted numerous similar cases; and (2) the severe economic imbalance between the parties; and (3) Plaintiff's over-riding interest in securing justice in the most efficient and cost-effective manner possible.

6. Plaintiff is an individual, residing in the State of Michigan.

---

[1]"[C]ourts have refused to dismiss a declaratory action where the defendant sent the plaintiff a cease-and-desist letter and . . . the plaintiff filed the declaratory action justifiably believing that further settlement negotiations would be fruitless." Kmart Corp. v. Key Indus., 877 F. Supp. 1048, 1053 (E.D. Mi. 1994) (citing Agridyne Techs., Inc. v. W.R. Grace & Co., 863 F. Supp. 1522 (D. Utah 1994)). Plaintiff did not learn that further discussions would be entirely fruitless until Tuesday, July 31, 2007, at 6:32 in the evening, when Howard Hertz, counsel for the Pantera Partnership, sent an email containing an entirely unreasonable ultimatum, without even (apparently) discussing alternatives with his clients.

7. Defendant Pantera Partnership, on information and belief, is a common-law partnership whose membership includes (but is not necessarily limited to) Defendants Abbott, Anselmo, Brown, and the Estate of Darrell Lance Abbott.

8. Defendant Vincent Paul Abbott, on information and belief, is an individual, whose preferred address for service of Summons and other communications, is 119 5th Avenue, 3rd Floor; New York NEW YORK 10003.

9. Defendant Philip Hanson Anselmo, on information and belief, is an individual, whose preferred address for service of Summons and other communications, is 119 5th Avenue, 3rd Floor; New York NEW YORK 10003.

10. Defendant Rex Robert Brown, on information and belief, is an individual, whose preferred address for service of Summons and other communications, is 119 5th Avenue, 3rd Floor; New York NEW YORK 10003.

11. Defendant the Estate of Darrell Lance ("Dimebag Darrell") Abbott, on information and belief, employs the preferred address for service of Summons and other communications, of 119 5th Avenue, 3rd Floor; New York NEW YORK 10003.

12. Defendants have personally availed themselves (by, among other things, and without limitation, contracting with Michigan counsel and sending correspondence to recipients known to reside in Michigan) of Michigan jurisdiction and of the benefits and protections of Michigan law.

13. Defendants are subject to personal jurisdiction, here.

14. Federal subject-matter jurisdiction also exists.

15. This case arises out of the Plaintiff's publication, from September 29, 1998, to the present, of a World Wide Web "website" at the address < PANTERA.com >.

16. The Plaintiff's Website is a non-commercial "fan appreciation" Website.

17. Prior to securing the Internet domain name < PANTERA.com >, the Plaintiff informed the Defendants (the musical group Pantera) that the address was then owned by a third-party (not a party to this litigation), and that the band Pantera could acquire the address from the third-party.

18. The band respectfully declined to do so at that time.

19. The Plaintiff then elected to secure the Internet address in his own name, and he did so with full knowledge of (and without any objection whatsoever by) the members of the musical group Pantera.

20. Since the time that Plaintiff acquired the domain name < Pantera.com >, it has always been registered solely and exclusively in the Plaintiff's name.

21. At the time that the Plaintiff became the exclusive registrant of < Pantera.com >, the domain name became (and ever since, has remained) the Plaintiff's sole and exclusive personal property. Kremen v. Cohen, 337 F.3d 1024, 1035-36 (9th Cir. 2003).

22. The Defendants knew about the Plaintiff's sole ownership of < PANTERA.com >, in his own name, at or about the time of registration, and raised no objection whatsoever.

23. Subsequently, the Plaintiff commenced publishing, on his own initiative and without any compensation or remuneration from the Defendants, a non-commercial "fan appreciation" Website, using < PANTERA.com >.

24. At or about the time that Plaintiff commenced publication of the Website, the Defendants knew about it, and also knew about Plaintiff's exclusive ownership of < PANTERA.com >, and did not raise any objection – either to the Website or to Plaintiff's

ownership of the domain name < PANTERA.com >.

25. By publishing the Website, the Plaintiff (without compensation) conferred a substantial benefit on the Defendants.

26. In exchange, it was understood and agreed that the Defendants would not interfere with the Plaintiff's exclusive ownership and use of < PANTERA.com >.

27. Defendants voluntarily accepted the substantial benefit conferred on them by the Plaintiff.

28. Plaintiff published the Website, and incurred a substantial detriment to himself (the time and expense of publishing the Website), in material reliance on the understanding he then had with the band Pantera.

29. No agreement ever existed between the Plaintiff and any of the Defendants, requiring Plaintiff ever to convey to any of the Defendants any of the copyrights on any of the contents of the Website, the Website address, or any other intellectual property or personal property related to the Website that belonged solely to the Plaintiff.

30. The Band not only failed to object to the Plaintiff's Website, but it even started taking affirmative and public steps to endorse, advocate, accept, and promote, the Plaintiff's < PANTERA.com > Website.

31. Indeed, on their album Reinventing the Steel, the band Pantera published the Website address < HTTP://WWW.PANTERA.COM >, and actively encouraged fans to go there. (They even called it, voluntarily, "The Official Pantera Web Site," even though they knew that the Plaintiff had sole ownership of the domain name, and the copyright on all the Website content).

32. Likewise, on the DVD, "Pantera 3: Vulgar Videos From Hell," the band again

expressly, and publicly, endorsed and approved the Plaintiff's publication of Plaintiff's Website.

33. In so doing, the band Pantara, and all the Defendants affirmatively ***acquiesced*** in the Plaintiff's use of < PANTERA.com > to publish a "fan appreciation" Website.

34. The Defendants continued to *acquiesce* for a considerable period of time.

35. However, some years later, the Defendants attempted to renege on the understanding and agreement, on which the Plaintiff had materially relied.

36. As a result of the Defendants' repudiation of the pre-existing understanding and agreement, the Defendants are liable, on *quantum meruit* grounds, to compensate the Plaintiff in full, for the benefit that he bestowed on the Defendants from 1998 to the present.

37. The Defendants self-servingly claim to have "trademark" rights in the mark PANTERA, but on information and belief, they no longer have such rights.

38. Rather, on information and belief, the Defendants substantially stopped their commercial activities previously conducted using the mark PANTERA, and discontinued their use of the mark in commerce.

39. Two years of continuing non-use of the mark raises a strong presumption of abandonment.

40. On information and belief, the Defendants abandoned the mark PANTERA.

41. Indeed, at least three federal trademark registrations of the mark PANTERA, were allowed to expire and were abandoned by the Defendants:

| App. No. | Reg. No. | Mark | STATUS | Cancellation Date |
|---|---|---|---|---|
| 74574132 | 1958497 | PANTERA | DEAD | December 2, 2006 |
| 74574134 | 1950592 | PANTERA | DEAD | October 28, 2006 |

| App. No. | Reg. No. | Mark | STATUS | Cancellation Date |
|---|---|---|---|---|
| 74574025 | 1935144 | PANTERA | DEAD | August 19, 2006 |

42. At the time that the Defendants, on information and belief, abandoned the mark PANTERA, the Plaintiff acquired exclusive rights to the mark PANTERA.

**COUNT ONE – DECLARATORY JUDGMENT (ACQUIESCENCE)**

43. Plaintiff repeats and realleges Paragraphs 1-42 as if set forth verbatim herein.

44. Regardless of who owns the trademark PANTERA, it is abundantly clear that the Defendants took affirmative steps to *acquiesce* in the Plaintiff's publication of a "fan appreciation" Website.

45. Accordingly, the Court should and must declare that any claim by the Defendants based on the Lanham Trademark Act (15 U.S.C. § 1125(a), or § 1114), or based on the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred by the affirmative defense of acquiescence.

46. Plaintiff respectfully prays for a declaration of non-infringement and of no viable cause of action, on the ground of acquiescence.

**COUNT TWO – DECLARATORY JUDGMENT (*LACHES*)**

47. Plaintiff repeats and realleges Paragraphs 1-46 as if set forth verbatim herein.

48. The presumptive *laches* period, for trademark cases, in Michigan, is three years.

49. Far more than three years have passed since the time that the Defendants should have known, and in fact did know, of the Plaintiff's ownership, and use to publish a Website, of the domain name < PANTERA.com >.

50. During the three-year *laches* period, Defendants did not file suit. Nor did they

secure any tolling agreement.

51. Plaintiff has been substantially prejudiced by the Defendants' unreasonable delay in bringing suit.

52. Accordingly, the Court should and must declare that any claim by the Defendants based on the Lanham Trademark Act (15 U.S.C. § 1125(a), or § 1114), or based on the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred by the affirmative defense of *laches*.

53. Plaintiff respectfully prays for a declaration of non-infringement and of no viable cause of action, on the ground of *laches*.

**COUNT THREE – DECLARATORY JUDGMENT (ABANDONMENT)**

54. Plaintiff repeats and realleges Paragraphs 1-53 as if set forth verbatim herein.

55. On information and belief, the Defendants abandoned any trademark rights in the mark PANTERA.com, through non-use.

56. If so, then on information and belief, the Plaintiff acquired the exclusive common-law right to, and ownership of, the mark PANTERA, on a nationwide basis.

57. Accordingly, Plaintiff prays for a declaration by the Court that Plaintiff, and not the Defendants, is now the true owner of the mark PANTERA.

58. Moreover, the Court should and must declare that any claim by the Defendants based on the Lanham Trademark Act (15 U.S.C. § 1125(a), or § 1114), or based on the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred because the Defendants no longer have trademark rights to assert.

59. Plaintiff respectfully prays for a declaration of non-infringement and of no viable cause of action, on this additional ground.

**COUNT FOUR – DECLARATORY JUDGMENT (NON-COMMERCIAL)**

60. Plaintiff repeats and realleges Paragraphs 1-59 as if set forth verbatim herein.

61. The Plaintiff's Website is a non-commercial "fan appreciation" Website published purely for protected First Amendment expressive purposes.

62. The Sixth Circuit and numerous other courts, routinely have held that such expressive, non-commercial, Websites (mostly highly-critical, noncommercial "gripe sites"), do not even implicate any issue, right or remedy for a trademark-owner under the Lanham Act, or the 1999 ACPA. Lucas Nursery and Landscaping, Inc. v. Grosse, 359 F.3d 806 (6th Cir. 2004); Taubman Co. v. Webfeats, 319 F.3d 770, 777-78 (6th Cir. 2003) ("We find that Mishkoff's use of Taubman's mark in the domain name 'taubmansucks.com' is purely an exhibition of Free Speech, and the Lanham Act is not invoked."); see also Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672 (9th Cir. 2005); Lamparello v. Falwell, 420 F.3d 309 (4th Cir. 2005); TMI, Inc. v. Maxwell, 368 F.3d 433 (5th Cir. 2004); Savannah College of Art and Design, Inc. v. Houeix, 369 F. Supp. 2d 929 (S.D. Ohio 2004); Ford Motor Co. v. 2600 Enterprises, 177 F. Supp. 2d 661 (E. D. Mi. 2001) ("Internet joke" is non-commercial).

63. Accordingly, the Court should and must declare that any claim by the Defendants based on the Lanham Trademark Act (15 U.S.C. § 1125(a), or § 1114), or based on the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred – because Plaintiff's activities are conclusively protected from any trademark or ACPA claim by the non-commercial expressive Website doctrine.

64. Plaintiff respectfully prays for a declaration of non-infringement and of no viable cause of action, on this additional ground.

**COUNT FIVE – DECLARATORY JUDGMENT (FAIR USE I)**

65. Plaintiff repeats and realleges Paragraphs 1-64 as if set forth verbatim herein.

66. The Plaintiff's Website is a non-commercial "fan appreciation" Website published purely for protected First Amendment expressive purposes.

67. Courts routinely have recognized that trademark claims are barred based on the doctrine of nominative fair use, Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003); Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 902 (9th Cir. 2002) (affirming, on another ground, trial court "fair use" ruling); New Kids on the Block v. News Am. Publishing Inc., 971 F.2d 302, 307 (9th Cir. 1992), as well as the defense of classic fair use. Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 809-10 (9th Cir. 2003).

68. The Plaintiff's publication of a "fan appreciation" Website is both a classic fair use, and a nominative fair use.

69. Accordingly, the Court should and must declare that any claim by the Defendants based on the Lanham Trademark Act (15 U.S.C. § 1125(a), or § 1114), or based on the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred because of the nominative and/or classic fair use doctrines.

70. Plaintiff respectfully prays for a declaration of non-infringement and of no viable cause of action, on this additional ground.

**COUNT SIX – DECLARATORY JUDGMENT (ACPA FAIR USE)**

71. Plaintiff repeats and realleges Paragraphs 1-70 as if set forth verbatim herein.

72. The 1999 ACPA contains the following "safe harbor:" "Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the

domain name was a fair use or otherwise lawful."

73. Plaintiff believes, always has believed, and always has had reasonable grounds to believe, that his publication of the Website in question, and the use of < PANTERA.com > to do so, is and always has been a fair use or otherwise lawful.

74. Accordingly, the Court should and must declare that any claim by the Defendants based on the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred because of the ACPA "safe harbor."

75. Plaintiff respectfully prays for a declaration of non-infringement and no of viable cause of action, on this additional ground.

**COUNT SEVEN – DECLARATORY JUDGMENT (NO BAD FAITH)**

76. Plaintiff repeats and realleges Paragraphs 1-75 as if set forth verbatim herein.

77. The 1999 ACPA requires affirmative proof of "a bad faith intent to profit" on the part of the accused individual.

78. Plaintiff did not have, and never has had, a "bad faith intent to profit."

79. Accordingly, the Court should and must declare that any claim by the Defendants based on the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred because of the lack of this essential element.

80. Plaintiff respectfully prays for a declaration of non-infringement and of no viable cause of action, on this additional ground.

**COUNT EIGHT – DECLARATORY JUDGMENT**
**(DISCLAIMER / NO LIKELIHOOD OF CONFUSION)**

81. Plaintiff repeats and realleges Paragraphs 1-80 as if set forth verbatim herein.

82. At all relevant times, the Plaintiff's < PANTERA.com > Website, has

displayed a prominent disclaimer.

83. A prominent disclaimer can be very effective to dispel any alleged likelihood of customer confusion. Taubman Co. v. Webfeats, 319 F.3d 770, 776 (6th Cir. 2003) ("In Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619 (6th Cir. 1996), we found the existence of a disclaimer very informative, and held that there was no likelihood of confusion, partly on that basis.").

84. Accordingly, the Court should and must declare that any claim by the Defendants based on the Lanham Trademark Act, or the Anticybersquatting Consumer Protection Act of 1999, is conclusively barred because of the presence of a prominent disclaimer on the < PANTERA.com > homepage.

85. Plaintiff respectfully prays for a declaration of non-infringement and of no viable cause of action, on this additional ground.

**COUNT NINE – *QUANTUM MERUIT***

86. Plaintiff repeats and realleges Paragraphs 1-85 as if set forth verbatim herein.

87. The Plaintiff conferred a substantial, uncompensated, benefit on the Defendants, in reasonable reliance on the mutual understanding that Plaintiff would continue to be able to publish a Website about Panterta, and could continue to use < PANTERA.com >, to do so, forever, if he chose to do so.

88. Pantera voluntarily accepted the benefit of this agreement and understanding, and was substantially benefitted thereby.

89. Pantera behaved inequitably by attempting to renege on the existing agreement, and by demanding that the Plaintiff stop publishing the Website that he spent so much time and effort developing, using the < PANTERA.com > domain name.

90. It would be grossly inequitable to permit the Defendants to retain the substantial benefit that they received from the Plaintiff, as a result of the Defendants' deception dishonesty, and abusively inconsistent behavior.

91. Accordingly, Plaintiff is entitled to compensation from the Defendants for the full and complete benefit conferred on the Defendants by the Plaintiff, from 1998 to the present.

**COUNT TEN – THE "THREE LAKES" TORT**

92. Plaintiff repeats and realleges Paragraphs 1-91 as if set forth verbatim herein.

93. The Defendants knew, and have known, that they have no viable claim against the Plaintiff, and that the Plaintiff's actions were, are, and always have been, perfectly lawful under well-settled principles of law.

94. Nevertheless, the Defendants in bad faith conspired with one or more Michigan attorneys in bad faith, to use economic threats and intimidation – namely the threat of the expense and inconvenience of defending against a completely bogus and baseless lawsuit – to accomplish an extra-legal *ulterior motive*, and improper purpose.

95. The Defendants' improper purpose and *ulterior motive* was to use baseless threats and economic leverage, to extort the transfer of < PANTERA.com >, from its rightful owner, to the Defendants.

96. This is commonly known as the improper and illegal practice of "reverse domain name hijacking."

97. The illegal practice in which the Defendants (in collusion with their counsel) willfully and knowingly engaged, is reprehensible, atrocious, and utterly intolerable in a civilized society.

98. The Michigan courts have recognized that such an improper use of litigation or the threat of litigation, for extortionate purposes, or in an attempt to secure an unlawful *ulterior objective*, is tortious and should be remedied by money damages. Three Lakes Ass'n v. Whiting, 75 Mich. App 564, 571; 255 N.W.2d 686 (1977).

99. Plaintiff has suffered substantial damages as a result of the Defendants' tortious and inequitable behavior, and abuse of the threat of litigation.

100. Accordingly, Plaintiff is entitled to money damages against the Defendants.

## CONCLUSION AND PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff respectfully prays for the relief requested herein, including (but not limited to) a declaratory judgment and money damages. Plaintiff also prays, under 15 U.S.C. § 1117, and on other grounds, for Defendants to pay Plaintiff's costs and attorney fees in prosecuting this action. Plaintiff also prays for such other and further relief, in law, equity, or otherwise, that this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated this 2nd day of AUGUST, 2007

By: [signature]

ERIC C. GRIMM (P58990)
WILLIAMS, HUGHES, & COOK, PLLC
120 W. Apple Avenue, P.O. Box 599
Muskegon, MI 49443-0599
(231) 728-1111
Fax: (231) 727-2130
Email: egrimm@whcspc.com